And our final case for this morning is Robertson v. French. Mr. Willenbrink. Good morning, Your Honors. May it please the court, my name is Zach Willenbrink. I was recruited by this court to represent Mr. Robertson in this appeal. We are requesting that this dismissal happen just days before trial, which was scheduled to occur on Mr. Robertson's constitutional claim, which arose under the Eighth Amendment, based upon Mr. Robertson's having been thrown in a filthy cell for six days, deprived of medication, and ultimately attempting suicide. So can I ask, Mr. Willenbrink, I understand that after Mr. Robertson filed his IFP application, the district court here, Judge Bruce, entered an order directing the prison to pay the initial filing fee out of his account, and that the order directed the court clerk to mail a copy of it to the attention of the prison's trust fund office. Is that correct? Yes, Your Honor, that's correct. So as far as Mr. Robertson knew, all of that had happened. It wasn't in his control. He was not assigned the responsibility of mailing that order to the prison. No, Your Honor, that is correct. And so as far as he knew, if that order had properly been mailed, then when the $4,000 hits his account, the entire filing fee would have been paid, because 20% of $4,000 is $800, considerably more than the filing fee of $350. Yes, that's correct as well. So the failure of the court clerk, or whoever's failure it was, either the court clerk or the failure of the prison to log it in properly, actually led to the situation we're now in, because he would have had his fee long since paid from the time the $4,000 got into his account, right? He would have had it paid, Your Honor, and this is perhaps not to the benefit of my client to say this, but I think we would probably still be in the same situation. The question would be the same, because the question here is whether Mr. Robertson was required to disclose a settlement agreement at the outside of the case, so whether his allegation of poverty was true or untrue. Right, and I was actually in some ways approaching this from the back end, because there are two things the district court criticizes him for. One, not listing what is sort of an account receivable, a receivable that he had a legal right to but just hadn't received yet, and the other was a failure to update, and I was thinking that on the failure to update, the way the statute works, it's self-updating unless somebody's the funds outside of the prison or whatever, and there's no allegation that Mr. Robertson was doing that, so I think this case is really only about the first. Did he have an obligation to disclose? That's correct. And there, if he'd actually used the long form, wouldn't it have been pretty clear that yes, he did have an obligation to disclose this? There is one question, I think, on the long form that could call for that. I think it's a question regarding whether there's any agency or department that owes money to him that he may receive. In this instance, the $4,000 that he was expecting to receive, there was no timeline in which he was expecting to receive that. If the court looks at the settlement agreement that he'd received, there's actually no deadline by which to pay. I don't think he had any idea at that point of when he would actually receive the settlement money. So I get that, but it does seem to me that disclosure is different from use, and if he had told the court that at some undefined time the state of Illinois was supposed to pay him $4,000, the court might still have imposed the same initial partial filing fee, and then had said, let's watch out, because an expectation isn't the same as having the money in your hands. The only thing I was thinking of is, what year is this? This is 2014? The case was filed in 2014. Yeah, that was when the initial order comes out. Wasn't this during the time the state was on the brink of bankruptcy at this point, so maybe it was a shakier expectation than it should have been. But I still think, you know, the language in the long form is the identification of every person, business, or organization owing you money, and the amount owed. Well, surely the state owed him money. On that point, Your Honor, though, Mr. Robertson did not fill out the long form, nor did the district court require him to fill out the long form. It accepted what was essentially a five-paragraph handwritten note attesting to what Mr. Robertson believed he needed to disclose, and there was nothing in that that was untrue. So does this take us to your scienter point? Because I gather Mr. Robertson is illiterate. There's some dispute on that in the record. Mr. Robertson maintains that he is illiterate. The state believes that. I think he's malingering to some extent, but his pleadings in the case were drafted by other prisoners. He has a very limited reading ability. I don't think that's in dispute. Was this pleading drafted by a jailhouse lawyer? It was, Your Honor. On that issue of his role, there's these record references to the fact that there have been previous settlement agreements that had been listed on IFP forms, and if we cross-reference the case numbers from the settlement agreement in this case, it takes us to different IFPs, obviously, than this one. So I think we can conclude from the record, and correct me if I'm wrong, that the settlement agreement that he had referenced in earlier instances is not the settlement agreement in this case. Is that right? Yes, that's correct, Your Honor, and as far as I understand from the record, the settlement agreements that he had disclosed in other cases were amounts that he'd actually received at that point that he was disclosing them. That's not entirely clear from the record, but at pages, I think, 92 of the appendix, he says, received settlement from Cook County Circuit Court case number, or whatever it was. So that would, I mean, your basic argument, as I understand it, is that an unsophisticated person might not realize that an account receivable is the kind of thing that you notionally have. So even if he made a mistake by not listing it, which it seems he probably did make a mistake by not listing it, it wasn't done with any scienter, and if you had some scienter requirement, then dismissal of the case shouldn't have happened. That's correct, and if we back up even further, just to the disclosure itself, section 1915A1, what it actually requires of the allegation of poverty, which is the basis for the dismissal here, was that the, quote, allegation of poverty was untrue. The allegation of poverty itself, what's required, is a statement of all assets such prisoner possesses, and I think there should be a real question here as to whether the settlement agreement that Mr. Robertson had was actually an asset that needed to be disclosed. I mean, if we were talking about bankruptcy, we would think it was an asset, wouldn't we? An expectation of payment from the state? I think it has very, very limited value here. Is this because it's Illinois? Because it's Illinois, because he hadn't received it for the ten months prior to his filing, didn't receive it for a year after he had filed. That's Illinois again. I'm afraid so. Your Honor, if I may reserve my time for rebuttal. You certainly may, Mr. Willenbury. Ms. Buell. Good morning, Your Honors. Counsel, may it please the Court, Assistant Attorney General Colin Buell on behalf of the defendant, Sapolis. The District Court did not clearly err when it implicitly concluded that Robertson made an untrue allegation of poverty on his IFP application by failing to disclose an asset, and did not abuse its discretion by dismissing his action with prejudice as a sanction for that lie. Indeed, the IFP... Does it matter that he... Do we have to have a finding that he knew that money that he didn't have yet was an asset? I mean, I'm just thinking to myself, if you went outside to the Federal Plaza in front of the post office and you asked people that question, how many people would realize that money you didn't have yet, but that you were expecting to get in, was an asset of yours already, as opposed to whenever it shows up? Well, it is still an asset. The IFP statute... Well, I know you're saying that, but if he didn't know it was an asset, are you arguing for a strict liability standard here? I think it's a strict liability standard, but I think... Why does that show abuse of the IFP process if it's strict liability? If we're going to say, we actually don't care what you know and what you don't know, you could be drooling on the bed, but we're still going to say you've lied to the court. The word lie implies to me scienter. Well, I think that there is scienter in this case based on the facts of this case, because what ended up happening was he did not disclose this asset. The IFP statute is clear that you must disclose all assets. But he has to have known it was an asset, and the distinction between this case and the ones to which Judge Brennan referred is that in the other cases, the record seems to indicate that he already had the settlement money. That is a common sense distinction that an unsophisticated person might draw. Well, in terms of the other cases, for example, in case number 11C2772, he actually used his own type diversion of the short form, which asks individuals to disclose any automobile, real estate, stock, bonds, security, trust, jewelry, artwork, or other financial instrument or thing of value that I own. Financial instrument, you just entered into a legal contract for those settlements in two other cases. But he had the money. I want you to tell me why that a person who doesn't know anything about money would know that money that you don't have is money that you do have. Because of this court's precedence in Thomas v. General Motors' acceptance court. I didn't realize he was reading this court's opinions. Well, you're still required to understand what the law is. But does that mean that you've lied to the court or you were mistaken? It might mean that you're mistaken. But in this instance, it means that you lied to the court. Right. So it might mean you're mistaken. And if you're mistaken in your filling this out, is it the state's position that it doesn't matter, that you still can't proceed? If you are purely mistaken and you put evidence forward of that mistake, then no, you would probably still be able to proceed. It would proceed. It would be... Okay. And what's the evidence that he isn't just mistaken here other than the cases where he had settlements where he had received the money? He has settlements where he had received the money. But if we don't think those are the same, then what other evidence do you have? We also have the fact that the district court asked in its rule to show cause order for why it should not be dismissed for reasons why this was a mistake. He did not put forward any sort of affidavit or any other evidence saying something was a mistake or a lie. So all we're left with is the fact that there were these two prior settlements. There was the payment of the settlement amount, and Mr. Robertson proceeded to pay the amount, ignoring what the IFP statute says, which is that the prisoner bears the liability for paying the filing fee and this court's opinion in this instance. It does say that, except also there's the court order. I'm very bothered by this. There's the court order directing the prison to pay. And, in fact, the PLRA very specifically puts this responsibility on the prisons exactly so that the money will come in directly out of the prisoner's account once he has taken the step of filing an action in federal court. And the order directs the court clerk to mail a copy of it to the attention of the trust fund office. This is the order of July 7, 2014. And if that had been done, it really wouldn't have been in Mr. Robertson's control. The initial filing fee would have been paid. When the settlement money hits his account, the rest of the filing fee would have been paid because it would have been comfortably inside the 20 percent number. It all would have worked the way this is supposed to. So it seems the state is making Mr. Robertson responsible for either the courts or the prisons' missteps, which seems wrong because it would have gotten this payment and the case would have gone to trial. Ultimately, both the PLRA and this court's decision in Lucien say that it is the prisoner who is required to pay the full amount of the filing fee and that the prisoner shall be required to make the monthly payments. These sorts of forwardings are meant to help facilitate that, but it's still the prisoner's responsibility. And as this court stated in Lucien, a prisoner who fails to ensure that the required sum is remitted in one month still has to make that up, you can go ahead and hold that money back or you can do an offender authorization for payment form, which Mr. Robertson knew how to do. In the record, there are examples of him using those authorization for payment forms in order to receive things like magazine subscriptions or jewelry. Why would he know to do that when he's told that the court has ordered this to happen? So he has to babysit the court? Is that what he has to do? I believe that it is still his responsibility to ensure that his filing fee— So now the prison—be careful what you wish for. What you are now saying is that there needs to be a rule in all Illinois prisons that every month, every prisoner involved in litigation has to bombard the office that runs the prisoner's accounts with requests, have you really sent my money to the court? Month in and month out, there have to be requests because you can never count on the prison, can you? And I'll do respect, Your Honor, it was three and a half years between when it was paid. But you are— You could check up on it at least once. You are saying that there is a rule that every month, in order not to be delinquent with an assessed payment, the prisoner has to check with the prison. Congress was quite clear that the prisoner themselves has to ensure the filing fee. Well, it's his account. It's not the responsibility of the state of Illinois or the prisoner's mother or anybody else. So in that sense, that's not surprising. Of course, Congress was trying to, I would say, colossally, unsuccessfully, but Congress was trying to create a disincentive for this kind of prisoner litigation. Absolutely. But it's his money, no matter who transmits it. And I would think that under Lucien, he does still bear the obligation to either hold that money back or when that settlement came in, fill out that authorization form. So if I were a pro bono lawyer, I would think I would advise every prisoner just to send a note every month, maybe file a grievance every month, and just check to make sure that the money is going to the court, lest you have your case dismissed the way this court did. I think if there is a situation where there isn't a material lie, when you are not failing to disclose all of your assets at the outset. But it's not a lie if he didn't know. I thought we agreed that if he's oblivious to the legal characterization of this contract, he's not lying. If there is a genuine mistake that could be shown on this record, which there can't be because there is no evidence that there is actually a mistake. Well, the trial court never holds any kind of evidentiary hearing about that. An evidentiary hearing is not required under this court's precedent. How did this come up then? The district court, according to the motion to dismiss, had contacted the parties saying that Mr. Robertson had not paid any of the court fees in the present case, including the $10.33 partial filing fee. And the very following day, defendants looked into the situation and filed their motion to dismiss based on the overall IFP statute that says that you shall dismiss at any time if the allegation of poverty is untrue. So who discovered that? It was a representative of the Central District of Illinois District Court Finance Department. If there are no further questions, we would ask that this court affirm the district court's judgment. Thank you. Sure. Thank you. Mr. Willenbrink. Just a few quick points on rebuttal, Your Honor. Opposing counsel raised the Thomas case, and I want to point out that there is a significant distinction between that case and this one. In Thomas, in response to a specific question on IFP application, whether he was expecting to receive any money in the future, the plaintiff in that case disclosed nothing. Nine days before he had filed that form, he had made a request for $73,000 to be distributed to him from his retirement account. I think that that's a very significant difference. Related to that, I found the language from Mr. Robertson's prior case where he had disclosed a settlement. The question that he answered was, have you received money from any other source, including judgments, in the last six months? He answered, yes. This is from the previous case that you had asked about, Judge Brennan. Civil action settlement, Cook County. So there was a very specific question there that he answered, and I think that that's why he disclosed it. The last point I wanted to touch on is one that you raised, Judge Wood, regarding the responsibility of the institution to forward the payments. Actually, under Section 1915b2, there is a requirement that the institution forward those payments. Section 1915b2 directs that they shall forward such 20% payments of the preceding month's income any time the prisoner's account balance exceeds $10 in a given month. Thank you, Your Honor. All right. Thank you very much, and you accepted this case. As you said, we recruited you. We appreciate your efforts on behalf of your client. Thanks as well, of course, to the State. We will take this case under advisement, and the court will be in recess. Thank you.